IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-83

No. 242A20-1

Filed 13 August 2021

NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC.

v.

JUDY LUNSFORD

Appeal from the opinion of a divided Court of Appeals panel, 271 N.C. App. 234 (2020), affirming entry of Order and Declaratory Judgment in favor of the plaintiff on 3 February 2019 by Judge Michael D. Duncan in Superior Court, Guilford County. Heard in the North Carolina Supreme Court on 17 May 2021.

*William F. Lipscomb for the Plaintiff-Appellee.*

*Burton Law Firm, PLLC, by Jason M. Burton, for the Defendant-Appellant.*

*Jon. R. Moore and C. Douglas Maynard, Jr., for North Carolina Advocates for Justice, amicus curiae.*

*Bailey & Dixon, LLP, by J.T. Crook, for North Carolina Association of Defense Attorneys, amicus curiae*

EARLS, Justice.

¶ 1        Cars and people are, naturally, mobile. They regularly traverse state lines. Unfortunately, but inevitably, cars and people also get into accidents. When they do, it can raise issues regarding which state's law governs the interpretation of various provisions of each of the involved parties' insurance contracts. In this case, we must

determine whether a North Carolina resident is entitled to collect underinsured motor vehicle coverage benefits from her North Carolina insurer, after she was injured while traveling in Alabama in a car owned and operated by a Tennessee resident and insured by a Tennessee insurer. To answer that question, we must decide if North Carolina or Tennessee law applies when ascertaining whether the Tennessee vehicle is "underinsured" within the meaning of a contract executed in North Carolina between a North Carolina resident and a North Carolina insurer.

¶ 2        Judy Lunsford, a North Carolina resident, was a passenger in her sister Levonda Chapman's vehicle when a serious accident occurred as they were travelling through Alabama. Chapman negligently drove her vehicle across a highway median into oncoming traffic, where it collided with an 18-wheeler. As a result of the accident, Lunsford was severely injured. Chapman was tragically killed.

¶ 3        Chapman was insured by a Nationwide Insurance Company policy purchased in her home state of Tennessee. As a passenger in Chapman's vehicle, Lunsford was entitled to recover from Nationwide, under the terms of Chapman's bodily injury liability coverage. Nationwide offered—and Lunsford accepted—the full $50,000 available under the policy's per person bodily injury coverage limit. Lunsford also claimed she was entitled to coverage under the underinsured motorist (UIM) provision of her own insurance contract executed in North Carolina with a different insurer, North Carolina Farm Bureau Mutual Insurance Company, Inc. (NC Farm

Bureau). NC Farm Bureau denied her claim and initiated a declaratory judgment action to establish its liability to Lunsford. The trial court agreed with NC Farm Bureau's position, concluding that Chapman's vehicle was not an "underinsured highway vehicle" as defined under North Carolina's Financial Responsibility Act (FRA). A divided panel of the Court of Appeals affirmed.

¶ 4        In its argument before this Court, NC Farm Bureau concedes that the majority below "employed incorrect reasoning" in reaching its conclusion that Lunsford was not entitled to coverage under the UIM provision of her insurance contract. Still, NC Farm Bureau argues the Court of Appeals "reached the correct result" in affirming the trial court's entry of declaratory judgment for NC Farm Bureau, contending that Chapman's vehicle is not an underinsured motor vehicle as defined by the terms of Chapman's Nationwide insurance contract, which incorporates Tennessee law.

¶ 5        However, in determining whether Lunsford is entitled to collect pursuant to the contract she entered into with NC Farm Bureau, we must apply North Carolina law to interpret the terms of a contract executed in North Carolina that necessarily incorporates North Carolina's FRA. We need not interpret Chapman's Nationwide insurance contract incorporating Tennessee law. Resolving this dispute does not require us to adjudicate any of Chapman's or Nationwide's rights, nor does it implicate any other state's interest in enforcing its own laws regulating the provision and maintenance of motor vehicle insurance.

¶ 6　　Applying North Carolina law, we affirm prior decisions of the Court of Appeals allowing interpolicy stacking when calculating the "applicable" policy limits as required under the relevant provision of the FRA, N.C.G.S. § 20-279.21(b)(4) (2019). Because the amount of the stacked UIM coverage limits exceeds the sum of the applicable bodily injury coverage limits, Chapman's car is an "underinsured motor vehicle" as defined by the FRA for the purposes of giving effect to Lunsford's contract with NC Farm Bureau. Accordingly, we reverse the decision of the Court of Appeals, vacate the trial court's order entering declaratory judgment for NC Farm Bureau, and remand to the trial court for further proceedings consistent with this opinion.

## I.　Factual Background

¶ 7　　At the time of the crash, both Lunsford and Chapman maintained motor vehicle accident insurance policies. Chapman's Nationwide policy provided her and her vehicle with bodily injury liability coverage subject to limits of $50,000 per person and $100,000 per accident, and UIM coverage subject to the same limits. Lunsford's NC Farm Bureau policy provided her with UIM coverage subject to the same limits as Chapman's bodily injury liability coverage ($50,000 per person / $100,000 per accident). After the crash, Nationwide offered, and Lunsford accepted, the full $50,000 available under the Nationwide bodily injury liability policy per person limit. Lunsford then sought an additional $50,000 in UIM coverage from her own insurer, NC Farm Bureau.

¶ 8        NC Farm Bureau denied Lunsford's claim and initiated a declaratory judgment action in Superior Court, Guilford County seeking a ruling establishing that "the UIM coverage of [the NC Farm Bureau policy] does not apply to [Lunsford's] injuries from the . . . motor vehicle collision in question and that [Lunsford] is not entitled to recover any UIM coverage from said policy." NC Farm Bureau contended that Chapman's vehicle was not an "underinsured motor vehicle" under North Carolina law. Lunsford argued in response that, under the relevant provision of the FRA as interpreted by the Court of Appeals in *Benton v. Hanford*, 195 N.C. App. 88 (2009), she was entitled to stack her NC Farm Bureau UIM coverage limit ($50,000) with the Nationwide UIM coverage limit ($50,000) for the purposes of determining whether "the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy" exceeded "the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident." *Id.* at 92 (quoting N.C.G.S. § 20-279.21(b)(4)). After stacking the policies, Lunsford contended she would be entitled to recover UIM benefits from NC Farm Bureau because the stacked UIM limits ($100,000) would be greater than Nationwide's bodily injury liability coverage limit ($50,000).

¶ 9        On 19 December 2018, the trial court entered judgment on the pleadings in NC Farm Bureau's favor. The trial court reasoned that because the Nationwide insurance contract was executed in Tennessee, "Chapman's policy is governed by Tennessee

law." Under Tennessee law, an "uninsured[1] motor vehicle does not include a motor vehicle . . . [i]nsured under the liability coverage of the same policy of which the uninsured motor vehicle coverage is a part." Tenn. Code § 56-7-1201(2) (2016). Because Chapman's vehicle was "insured under the liability coverage of the same policy from which the claimant [Lunsford] is seeking UIM coverage," the trial court concluded that Chapman's vehicle "*cannot* be an underinsured motor vehicle under Chapman's policy, the UIM coverage of Chapman's policy does not apply to the accident in question and, therefore, it is not 'applicable' UIM coverage within the meaning of the North Carolina UIM statute's definition of the 'underinsured highway vehicle' and [*Benton*]." Since the Nationwide UIM coverage was not "applicable," there was no limit for Lunsford to stack with her own NC Farm Bureau UIM coverage limit. Defined thusly, "Chapman's vehicle does not satisfy [the FRA's definition of an underinsured motor vehicle] because the liability coverage of Chapman's policy ($50,000 / $100,000) is equal to (not less than) the UIM coverage of Lunsford's policy."

A divided panel of the Court of Appeals affirmed, but on a different rationale than the one utilized by the trial court. The majority agreed with the trial court that Chapman's Nationwide UIM policy was not "applicable at the time of an accident under [N.C.G.S.] § 20-279.21(b)(4)." *North Carolina Farm Bureau Mut. Ins. Co., Inc.*

---

[1] Chapman's contract uses the term "uninsured motor vehicle" in a manner which encompasses what would be termed an "underinsured motor vehicle" under North Carolina law. We use the latter throughout for ease of reading.

*v. Lunsford*, 271 N.C. App. 234, 238 (2020). However, the majority's conclusion that the Nationwide policy was not "applicable" rested upon its belief that Lunsford did not "qualif[y] as a 'person insured' [under the Nationwide policy] as that term is defined by [N.C.G.S. § 20-279.21(b)(3)]." *Id.* According to the majority, because Lunsford was neither "the named insured [nor], while resident of the same household, the spouse of the named insured [or] relatives of either," she did not "qualif[y] as a 'person insured' " under Chapman's Nationwide policy, precluding Lunsford from stacking the Nationwide UIM coverage limit. *Id.* at 237 (quoting *Sproles v. Greene*, 329 N.C. 603, 608 (1991)).

¶ 11      Judge Murphy dissented based upon his interpretation of Chapman's contract with Nationwide. According to Judge Murphy, Chapman's Nationwide policy contained a "conformity clause" stating that the insurer would "adjust this policy to comply . . . [w]ith the financial responsibility law of any state or province which requires higher liability limits than those provided by this policy." *Id.* at 242–43 (Murphy, J., dissenting). Therefore, Judge Murphy read Chapman's Nationwide policy as "explicitly incorporat[ing] our FRA," requiring the court to apply the definition of an "underinsured motor vehicle" provided by N.C.G.S. § 20-279.21(b)(4). *Id.* at 242. Under *this* definition of an underinsured motor vehicle, as interpreted by the Court of Appeals in *Benton*, Lunsford was entitled to "stack the $50,000.00 limit of UIM coverage in Chapman's Nationwide policy with the $50,000.00 limit of UIM

coverage in Lunsford's [NC Farm Bureau] policy." *Id.* at 245.

¶ 12    Judge Murphy also disputed the majority's conclusion that Lunsford was not a "person[ ] insured" by Chapman's Nationwide policy. He noted that in *Sproles*, this Court interpreted the relevant provision of the FRA, N.C.G.S. § 20-279.21(b)(3), to

> essentially establish[ ] two "classes" of "persons insured":
> (1) the named insured and, while resident of the same
> household, the spouse of the named insured and relatives
> of either and (2) any person who uses with the consent,
> express or implied, of the named insured, the insured
> vehicle, and a guest in such vehicle.

*Id.* at 244. Applying *Sproles*, Judge Murphy concluded that "Lunsford, as the named insured, is a class one insured with respect to the NCFB policy . . . . She is also a class two insured with respect to Chapman's Nationwide policy as a guest in the insured vehicle with consent of the named insured." *Id.*

## II.    Analysis

¶ 13    All insurers doing business in North Carolina are required to offer UIM coverage. *See* N.C.G.S § 20-279.21(b)(4) (stating that every insurer's "policy of liability insurance . . . [s]hall . . . provide underinsured motorist coverage"). "The purpose of underinsured motorist (UIM) coverage in our state is to serve as a safeguard when tortfeasors' liability policies do not provide sufficient recovery—that is, when the tortfeasors are 'under insured.' " *Lunsford v. Mills*, 367 N.C. 618, 632 (2014) (Newby, J., concurring in part, dissenting in part). UIM coverage kicks in when the insured is injured due to the tortious conduct of another driver. "Following an

automobile accident, a tortfeasor's liability coverage is called upon to compensate the injured plaintiff, who then turns to *his own UIM coverage* when the tortfeasor's liability coverage is exhausted." *Harris v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 188 (1992) (emphasis added); *see also* Douglas R. Richmond, *Issues and Problems in "Other Insurance," Multiple Insurance, and Self-Insurance*, 22 Pepp. L. Rev. 1373, 1420 (1995) ("UIM policies provide first-party coverage" to insureds).

¶ 14        To determine whether Lunsford is entitled to access the UIM coverage she purchased from NC Farm Bureau, "[t]he threshold question . . . is whether the tortfeasor's vehicle is an 'underinsured highway vehicle' as the term is used in N.C.G.S. § 20–279.21(b)(4)." *Harris*, 332 N.C. at 187. Under N.C.G.S. § 20–279.21(b)(4), a vehicle is an "underinsured highway vehicle" if

> the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.

¶ 15        Everyone agrees that the only bodily injury liability insurance policy "applicable at the time of the accident" is Lunsford's Nationwide policy, and that Lunsford's NC Farm Bureau UIM policy is an "applicable" UIM coverage limit. The crux of the parties' dispute is whether Chapman's Nationwide UIM coverage limit is also an "applicable limit of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy." Lunsford says it is. NC Farm

Bureau says it is not.

¶ 16    Because of each policy's respective limits, the answer to this question is dispositive in this case. If the Nationwide UIM coverage limit is "applicable," then—under Court of Appeals precedent which NC Farm Bureau does not challenge—Lunsford is entitled to stack the Nationwide UIM coverage limit ($50,000) with the NC Farm Bureau coverage limit ($50,000). *Benton,* 195 N.C. App. at 92 ("UIM coverage may be stacked interpolicy to calculate the applicable limits of underinsured motorist coverage for the vehicle involved in the accident for the purpose of determining if the tortfeasor's vehicle is an 'underinsured highway vehicle.' "). If Lunsford is entitled to stack the Nationwide and NC Farm Bureau UIM coverage limits, "the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident" (Nationwide's $50,000 bodily injury coverage limit) would be "less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy" (the $100,000 in stacked UIM coverage limits), and Chapman's vehicle would be "underinsured." If the Nationwide UIM coverage limit is not "applicable," then it cannot be stacked with Lunsford's NC Farm Bureau coverage limit, the bodily injury liability coverage limit ($50,000) would be equal to the sum of the "applicable" UIM coverage limits ($50,000), and Chapman's vehicle would not be "underinsured."

¶ 17    Initially, we reject the distinction the majority below relied upon in arriving at

its conclusion that Chapman's Nationwide coverage limit was not "applicable" within the meaning of N.C.GS. § 20-279.21(b)(4). As Judge Murphy's dissent correctly explains, there are two "classes" of "persons insured" set forth in N.C.G.S. § 20-279.21(b)(3), "Class I" insureds (named insureds and relatives who reside in the insured's household) and "Class II" insureds (individuals using a vehicle with the driver's consent). Lunsford is plainly a "Class I" insured with regards to the NC Farm Bureau policy and a "Class II" insured with regards to the Nationwide policy. Therefore, the fact that Lunsford is not a relative who resides in Chapman's household is irrelevant. NC Farm Bureau acknowledges as much—in their presentation to this Court, they concede that "it is undisputed that Lunsford *was an insured* of Chapman's UIM coverage . . . because she was occupying Chapman's vehicle and the [c]ourt's opinion does not explain why her status as a Class II insured of the Chapman policy prevents that policy from being applicable within the meaning of N.C.GS. § 20-279.21(b)(4)."

¶ 18        Rather than defend the Court of Appeals' reasoning—or ask this Court to overrule *Benton* and other cases recognizing the propriety of interpolicy stacking— NC Farm Bureau contends that interpolicy stacking is not permitted in this case because Chapman was a Tennessee resident who entered into a contract with Nationwide in Tennessee. In NC Farm Bureau's view, Chapman's Nationwide contract does not incorporate North Carolina's FRA, and it need not, because it was

executed in Tennessee and North Carolina lacks any substantial connection to Chapman or the accident at issue. By extension, NC Farm Bureau contends that the terms of the Nationwide contract, which incorporate Tennessee's definition of an underinsured motor vehicle, supply the definition to be applied in determining whether Chapman's vehicle is underinsured. It is uncontroverted that under the relevant Tennessee statute, Tenn. Code § 56-7-1201(2), Chapman's vehicle cannot be underinsured.

¶ 19     To be clear, NC Farm Bureau does not dispute that (1) Lunsford is seeking UIM coverage under her *own* insurance policy issued by NC Farm Bureau pursuant to a contract entered into in North Carolina, (2) all automobile accident insurance policies executed in North Carolina necessarily incorporate North Carolina's FRA, and (3) this Court must apply North Carolina law when interpreting an insurance policy issued in North Carolina to a North Carolina insured. What NC Farm Bureau appears to be arguing is that North Carolina law requires us to look to the terms of Chapman's Nationwide policy to ascertain whether the UIM coverage limit contained therein is an "*applicable* limit[ ] of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy." N.C.G.S. § 20-279.21(b)(4) (emphasis added). As we understand it, NC Farm Bureau's position can be articulated as follows: When an individual is injured by a driver's tortious conduct, the driver's UIM coverage limit is not an "applicable limit[ ] of underinsured motorist

coverage for the vehicle involved in the accident and insured under the owner's policy" which can be stacked with the injured party's UIM coverage limit if, under the terms of the *tortfeasor's* contract, the vehicle is not underinsured.

The essential question in this case is one of statutory interpretation: What did the General Assembly intend by using the phrase "applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy" in N.C.G.S. § 20-279.21(b)(4)? "The primary objective of statutory interpretation is to ascertain and effectuate the intent of the legislature." *Lunsford v. Mills*, 367 N.C. at 623. "The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, the spirit of the act and what the act seeks to accomplish." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664 (2001) (cleaned up). Thus, we begin with the statutory language the General Assembly selected. "If the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms so long as it is reasonable to do so." *Id*. If the language is ambiguous or susceptible to multiple meanings, we turn to the other sources to identify the General Assembly's intent.

Read in context, the General Assembly's choice of the term "applicable" does not unambiguously answer the question of whether an injured party is or is not permitted to stack the tortfeasor's UIM coverage limit under these circumstances. *Black's Law Dictionary* defines applicable as "1. Capable of being applied; fit and

right to be applied. 2. (Of a rule, regulation, law, etc.) affecting or relating to a particular person, group, or situation; having direct relevance." *Black's Law Dictionary* (11th ed. 2019). Citing a similar dictionary definition, NC Farm Bureau argues that "[t]he UIM coverage of Chapman's policy is not capable of being applied to Lunsford's claim because the policy provisions, and the applicable Tennessee statutes, preclude her vehicle from being an underinsured vehicle for the UIM coverage of her policy."

¶ 22        But this tautological proposition smuggles into the FRA the very premise NC Farm Bureau seeks to uncover in the statutory text. The provision does not state that "applicable" means "contained in a policy which would by its own terms define the tortfeasor's vehicle as underinsured." The text contains only the phrase "applicable limits." The question before this Court is what meaning the General Assembly intended to communicate by including that phrase. NC Farm Bureau offers one possible answer, but that answer cannot be derived from the text alone, and we must not read into a statute "language that simply is not there." *Boseman v. Jarrell*, 364 N.C. 537, 554 (2010) (Hudson, J., dissenting); *see also Borden v. United States*, 141 S.Ct. 1817, 1829 (2021) ("[W]e must construe the [statutory clause] as it is—without first inserting the word[s] that will (presto!) produce the dissent's reading.").

¶ 23        *Benton* and the other cases construing N.C.G.S. § 20–279.21(b)(4) to allow interpolicy stacking do not precisely define the phrase "applicable limits." Still,

nothing in those cases supports NC Farm Bureau's proposed construction. In *Benton*—which, we reiterate, NC Farm Bureau does not challenge—the Court of Appeals did not refer to the tortfeasor's state of residence. The Court of Appeals explicitly rejected the tortfeasor's insurer's effort to define "underinsured motor vehicle" in accordance with the terms of the *tortfeasor's* UIM policy, instead defining "underinsured motor vehicle" in accordance with the terms of the FRA. *Benton*, 195 N.C. App. at 91–92 ("Because the [FRA] specifically defines 'underinsured highway vehicle[,]' . . . we turn to the Act and the cases interpreting it without regard to the definition of the term in the [tortfeasor's] policy."). In applying the definition supplied by the FRA, the *Benton* court without further explanation treated "the UIM coverage for the vehicle owned by the [tortfeasor] policy holder" as "applicable." *Id.* at 97.

¶ 24    Even though *Benton* interpreted and applied N.C.G.S. § 20–279.21(b)(4), the decision contains no reference to the fact NC Farm Bureau and the dissent now claims was dispositive.[2] Acknowledging this omission, NC Farm Bureau invites us to take

---

[2] Although *Benton* is not controlling, it is also not irrelevant, as the dissent suggests. In addition to not asking this Court to consider whether *Benton* was wrongly decided, NC Farm Bureau does not dispute that *Benton* was the governing law at the time it entered into an insurance contract with Lunsford. Thus, although we undoubtedly have the authority to displace *Benton*, doing so sua sponte would risk depriving the parties of the benefit of the bargain they struck. Further, we find it notable that the General Assembly has not acted in a way that evinces disagreement with *Benton* in the years since that case was decided. *See, e.g.*, *Brown v. Kindred Nursing Centers E., L.L.C.*, 364 N.C. 76, 83 (2010) ("[L]egislative acquiescence is especially persuasive on issues of statutory interpretation. When the legislature chooses not to amend a statutory provision that has received a specific interpretation, we assume lawmakers are satisfied with that interpretation.").

"judicial notice" that the record in *Benton* indicates the tortfeasor's insurance contract was executed in North Carolina. We decline the invitation to read *Benton* as turning on a fact which, upon close examination of the decision itself, appears to have been entirely extraneous to the court's reasoning and ultimate holding. We are unconvinced by NC Farm Bureau's effort to find in *Benton* a legal rule the court did not propound.

¶ 25 Instead, we understand the General Assembly's use of the phrase "applicable limits" to refer to the UIM coverage limits contained within the insurance policy covering the tortfeasor's vehicle, in a circumstance such as this one where the tortfeasor is the driver and the injured party is a passenger seeking to access the UIM coverage contained within his or her own policy incorporating North Carolina's FRA. This interpretation is consistent with "the spirit of the [FRA] and what the [FRA] seeks to accomplish." *Lenox*, 353 N.C. at 664 (cleaned up).

¶ 26 "The avowed purpose of the Financial Responsibility Act, of which N.C.G.S. § 20–279.21(b)(4) is a part, is to compensate the innocent victims of financially irresponsible motorists. It is a remedial statute to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished." *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 265 (1989) (citation omitted). Interpreting the ambiguous language contained in N.C.G.S. § 20–279.21(b)(4) to permit interpolicy stacking in this circumstance is "[i]n keeping with the purpose of the [FRA]" because

it allows injured North Carolina insureds to access the UIM coverage they paid for in a greater number of circumstances, reducing the likelihood that the costs of the damage caused by an underinsured tortfeasor will be borne by the insured alone. *Benton*, 195 N.C. App. at 92; *see also Proctor v. North Carolina Farm Bureau Mut. Ins. Co.*, 324 N.C. 221, 225 (1989) ("[T]he statute's general purpose, which has not been changed, is best served when the statute is interpreted to provide the innocent victim with the fullest possible protection."). The magnitude of North Carolina's interest in protecting insureds in no way depends upon the state in which the tortfeasor executed his or her insurance contract. Nor is there any reason to look to another state's law in defining the circumstances under which a North Carolina insured can access UIM coverage under his or her own insurance policy.

¶ 27        Further, NC Farm Bureau's proposed interpretation does not reflect the way UIM coverage functions. UIM coverage becomes available to an insured from his or her own insurer when the damage caused by a tortfeasor exceeds the tortfeasor's bodily injury liability coverage limits. The circumstances under which an insured will be able to claim UIM benefits are dictated by the terms and limits of the insured's own contract with his or her insurer—and, by extension when the insurance contract is executed in North Carolina, the provisions of the FRA. *See, e.g.*, *Lunsford v. Mills*, 367 N.C. at 635 (2014) (Newby, J., concurring in part, dissenting in part) ("[A]n insured plaintiff's UIM recovery 'is controlled contractually by the amount of the UIM

policy limits purchased and available to her.' ") (quoting *Nikiper v. Motor Club of Am. Cos.*, 232 N.J. Super. 393, 398–99, *certification denied*, 117 N.J. 139 (1989)). It follows logically that the availability of UIM coverage to the insured—which hinges upon the threshold determination of whether a vehicle is underinsured—should be dictated by the terms of the bargain struck by the insured and the insurer, not by the terms of the bargain struck by the tortfeasor with his or her insurer. The availability of the UIM coverage Lunsford obtained should not be contingent on the tortfeasor fortuitously residing in a state whose elected officials share the North Carolina General Assembly's concern for protecting injured insureds to the same extent.

If it were Chapman seeking to recover UIM benefits from Nationwide after an accident caused by Lunsford's tortious driving, then the terms of the Nationwide contract would supply the definition of an "underinsured vehicle."[3] But the very reason an insurance contract includes a UIM coverage provision is to define the circumstances under which another vehicle (the one driven by the tortfeasor) is to be considered underinsured, for the purpose of establishing when the insurer's obligation to disburse UIM benefits is triggered. The definition of an underinsured

---

[3] If this circumstance were presented to this Court, we would be called upon to interpret a contract executed in Tennessee incorporating Tennessee law, and NC Farm Bureau's argument that the Full Faith and Credit Clause of Art IV. § 1 of the United States Constitution might be relevant. However, in this case, we are called upon to interpret a contract executed in North Carolina ordering the relations between two North Carolina residents which incorporated North Carolina law.

motor vehicle that a North Carolina insured agrees to with his or her insurer does not incorporate or in any way depend upon the definition that would be operative if it were the tortfeasor who was seeking to recover under his or her own insurance policy.

¶ 29        It is not at all anomalous that a vehicle might be considered "underinsured" as that term is defined in a North Carolina contract incorporating the FRA, but not "underinsured" as that term is defined in an out-of-state contract incorporating that state's insurance laws. Out of concern for the consequences of leaving North Carolina insureds vulnerable to financial ruin, or even simply being undercompensated, when they are harmed by irresponsible drivers, North Carolina has chosen to mandate that insurers make UIM coverage available in a circumstance where Tennessee has not. To give effect to the public policy considerations motivating the General Assembly's legislative choice, and to honor the bargains struck by North Carolinians with their insurers in light of the North Carolina FRA, we must apply the definition of an "underinsured motor vehicle" chosen by the representatives of the people of North Carolina, not the one chosen by the representatives of the people of Tennessee. *See Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428 (2000) ("[A]n automobile insurance contract should be interpreted and the rights and liabilities of the parties thereto determined in accordance with the laws of the state where the contract was entered."). Therefore, we hold that the UIM coverage limit contained in Chapman's

Nationwide policy is an "applicable" limit within the meaning of N.C.G.S. § 20–279.21(b)(4).[4]

### III.    Conclusion

When a passenger who has previously obtained UIM coverage pursuant to a contract executed in North Carolina is injured while travelling in a vehicle driven by someone else, and the injury results from that driver's tortious conduct, the driver's UIM coverage limits are "applicable" within the meaning of N.C.G.S. § 20-279.21(b)(4). Under these circumstances, the injured passenger is entitled to stack the driver's UIM coverage limit with the limits contained in the passenger's own policy for the purposes of determining whether the vehicle is an "underinsured motor vehicle" within the meaning of his or her own policy, which necessarily incorporates North Carolina's FRA. In this case, after stacking the applicable Nationwide and NC Farm Bureau coverage limits, Chapman's vehicle is "underinsured" as that term is defined in N.C.G.S. § 20-279.21(b)(4). Accordingly, we reverse the decision of the Court of Appeals and remand to the trial court for entry of an order granting a declaratory judgment in favor of Judy Lunsford.

REVERSED.

---

[4] Because we reach this conclusion based upon our interpretation of Lunsford's NC Farm Bureau insurance contract and the North Carolina FRA, we do not reach the question of whether the "conformity clause" in Chapman's Nationwide insurance contract incorporates N.C.G.S. § 20-279.21(b)(4).

Justice BARRINGER, dissenting.

This matter concerns the underinsured motorist bodily injury coverage in the insurance policy between North Carolina Farm Bureau Mutual Insurance Company, Inc. (Farm Bureau) and Judy Lunsford (Lunsford Policy). The material facts are undisputed and the law well-established. However, the majority assumes the role of the legislature in this matter and ignores our well-established principles for the construction of insurance policies and the determination of what law applies to insurance policies. Applying the plain language of the statute enacted by the North Carolina legislature to a policy entered in North Carolina and Tennessee law to a policy entered in Tennessee, consistent with our precedent, clearly leads to affirming the trial court's granting of judgment on the pleadings in Farm Bureau's favor. Therefore, I respectfully dissent.[1]

## I. Background

Lunsford, while a resident of North Carolina, applied in North Carolina for and was issued in North Carolina the Lunsford Policy from Farm Bureau. The named insured for the Lunsford Policy was Lunsford, and the Lunsford Policy covered a 2016 Toyota RAV4, which at all relevant times, was titled and registered to Lunsford in

---

[1] However, we agree with the majority and the parties to this appeal that the Court of Appeals erred in its application of the classes of insured. *N.C. Farm Bureau Mut. Ins. Co., Inc. v. Lunsford*, 271 N.C. App. 234, 238–39 (2020). In this matter, it is undisputed that Lunsford was an insured under Chapman's underinsured motorist coverage.

North Carolina. The Lunsford Policy provided uninsured and underinsured motorist bodily injury coverage of $50,000 per person/$100,000 per accident.

While a passenger in a 2015 Chevrolet Silverado (Silverado) owned by and being driven by Levonda Chapman, a resident of Tennessee, Lunsford was seriously injured as a result of Chapman's negligent driving. The accident occurred in Alabama. At the time of the accident, Chapman's Silverado was covered by an automobile insurance policy between Nationwide Mutual Insurance Company (Nationwide) and Chapman (Chapman Policy), which provided bodily injury liability coverage of $50,000 per person/$100,000 per occurrence and underinsured motorist coverage of $50,000 per person/$100,000 per occurrence. The Chapman Policy was entered into in Tennessee. Nationwide offered the policy limit of the Chapman Policy bodily injury liability coverage, $50,000, to Lunsford.

The dispute between Lunsford and Farm Bureau concerns whether Chapman's vehicle was an underinsured highway vehicle. As relevant to this appeal, the underinsured motorist coverage under the Lunsford Policy applies when "[Lunsford] is legally entitled to recover from the owner or operator of an underinsured [highway] vehicle because of bodily injury sustained by [her] and caused by the accident." Recognizing that the definition of underinsured highway vehicle in the Lunsford Policy is narrower than the applicable subsection of the statute, N.C.G.S. § 20-279.21(b)(4), enacted by the North Carolina legislature, Farm Bureau conceded that N.C.G.S. § 20-279.21(b)(4) prevails over the narrower policy provision in the Lunsford

Policy. Subsection 20-279.21(b)(4) of the General Statutes of North Carolina defines underinsured highway vehicle as

> a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy. For purposes of an underinsured motorist claim asserted by a person injured in an accident where more than one person is injured, a highway vehicle will also be an "underinsured highway vehicle" if the total amount actually paid to that person under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy. Notwithstanding the immediately preceding sentence, a highway vehicle shall not be an "underinsured motor vehicle" for purposes of an underinsured motorist claim under an owner's policy insuring that vehicle unless the owner's policy insuring that vehicle provides underinsured motorist coverage with limits that are greater than that policy's bodily injury liability limits.

N.C.G.S. § 20-279.21(b)(4) (2019).

¶ 35    Farm Bureau also acknowledges that the Court of Appeals has construed the legislature's use of the plural "limits" in the phrase "less than the applicable limits" to allow interpolicy stacking of applicable policies and does not challenge this holding in this matter. *See Benton v. Hanford*, 195 N.C. App. 88, 92–93 (2009); *N.C. Farm Bureau Mut. Ins. Co. v. Bost*, 126 N.C. App. 42, 50–51 (1997). Instead, Farm Bureau contends that the Chapman Policy is not an *applicable* policy. Specifically, the

Chapman Policy excludes from the definition of underinsured highway vehicle[2] the Silverado—as both a vehicle insured under the liability coverage of the Chapman Policy and a vehicle operated by the insured, Chapman. This exclusion is consistent with the statutes enacted by the Tennessee legislature defining an uninsured highway vehicle for purposes of uninsured and underinsured motorist coverage. *See* Tenn. Code §§ 56-7-1201, -1202 (2016).

¶ 36      Lunsford does not dispute that the Chapman Policy is an insurance contract entered into in Tennessee by a Tennessee resident or the construction of the Chapman Policy under Tennessee law presented by Farm Bureau. Instead, Lunsford, relying on *Benton*, appears to contend that the definition of underinsured highway vehicle in the statute enacted by the North Carolina legislature applies to every policy, including the Chapman Policy. Thus, according to Lunsford, we ignore the plain language of the Chapman Policy and Tennessee law. Lunsford also argues Tennessee law does not apply because injury to a North Carolina resident is sufficient to establish a close connection with North Carolina and require the application of North Carolina law to the construction of the policy as in *Collins & Aikman Corp. v. Hartford Acc. & Indemnity Co.*, 335 N.C. 91 (1993). Lastly, Lunsford raised in her reply before the Court of Appeals and her brief with this Court that a financial

---

[2] The Chapman Policy and the Tennessee statutes use the term "uninsured motor vehicle." Because the distinction in the terms is not significant and to aid the reader, the term "underinsured highway vehicle" is also used when referring to the Chapman Policy and the Tennessee statutes.

responsibility provision in the Chapman Policy dictates the application of North Carolina law in this matter.

## II. Construction of Insurance Policies

¶ 37 "This Court has long recognized its duty to construe and enforce insurance policies as written, without rewriting the contract or disregarding the express language used." *Fid. Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380 (1986). "However, when a statute is applicable to the terms of an insurance policy, the provisions of the statute become a part of the policy as if written into it." *Bray v. N.C. Farm Bureau Mut. Ins. Co.*, 341 N.C. 678, 682 (1995). Thus, the policy is construed in accordance with its written terms unless a binding statute, regulation, or order requires a different construction. *Allstate Ins. Co. v. Shelby Mut. Ins. Co.*, 269 N.C. 341, 345 (1967). When unambiguous, the plain language of the policy controls, *N.C. Farm Bureau Mut. Ins. Co. v. Martin*, 376 N.C. 280, 286 (2020), or if superseded by a binding statute, the plain language of the statute controls, *see generally Fid. Bank v. N.C. Dep't of Revenue*, 370 N.C. 10, 20 (2017).

> Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect.

*Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505–06 (1978). This Court regularly looks to non-legal dictionaries to determine plain meaning for policies and statutes.

*See, e.g.*, *Raleigh Hous. Auth. v. Winston*, 376 N.C. 790, 2021-NCSC-16, ¶ 8 (2021); *Martin*, 376 N.C. at 287.

When a provision of an insurance policy is ambiguous, the provision will be given the meaning most favorable to the insured. *Shelby Mut.*, 269 N.C. at 346. However, "[t]he terms of another contract between different parties cannot affect the proper construction of the provisions of an insurance policy." *Id.* Rather,

> [t]he existence of the second contract, whether an insurance policy or otherwise, may or may not be an event which sets in operation or shuts off the liability of the insurance company under its own policy. Whether it does or does not have such effect, first requires the construction of the policy to determine what event will set in operation or shut off the company's liability and, second, requires a construction of the other contract, or policy, to determine whether it constitutes such an event.

*Id.*

In this matter, Farm Bureau has argued that the language written into the Lunsford Policy of N.C.G.S. § 20-279.21(b)(4)—"the applicable limits of underinsured motorist coverage"—is clear and unambiguous. Farm Bureau, relying on the definition from the American Heritage Dictionary of English Language, identifies that the plain meaning of "applicable" as "[c]apable of being applied; relevant or appropriate." *Applicable, The American Heritage Dictionary of the English Language* (5th ed. 2020), https://ahdictionary.com/word/search.html?q=applicable. Lunsford has neither disputed that the language is unambiguous nor disputed or offered an alternative plain meaning of the term "applicable."

¶ 40        The language is unambiguous. Thus, the statutory language and policy language of the Lunsford Policy provide that only underinsured motorist coverage capable of being applied are added together, i.e., stacked, for purposes of determining whether the threshold requirement of an underinsured highway vehicle is met under N.C.G.S. § 20-279.21(b)(4). Thus, in order for Lunsford to prevail, she would have to prove that the underinsured motorist coverage of the Chapman Policy is capable of being applied. *See Martin*, 376 N.C. at 285 ("The party seeking coverage under an insurance policy bears the burden 'to allege and prove coverage.' " (quoting *Brevard v. State Farm Mut. Auto. Ins. Co.*, 262 N.C. 458, 461 (1964)). In this case, which state's law applies determines whether the underinsured motorist coverage of the Chapman Policy is capable of being applied.

¶ 41        Adopting Lunsford's argument as done by the majority requires this Court to omit the word "applicable" and read the statute as:

> An "uninsured motor vehicle," as described in subdivision (3) of this subsection, includes an "underinsured highway vehicle," which means a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the . . . limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.

N.C.G.S. § 20-279.21(b)(4). This construction clearly disregards established canons of construction for statutes and insurance policies that, when possible, "every word and every provision is to be given effect," *Woods*, 295 N.C. at 506.

The majority's construction also does not serve the avowed purpose of the Motor Vehicle Safety and Financial Responsibility Act (the Act) "to require financial responsibility of reckless, inefficient and irresponsible operators of motor vehicles involved in accidents." *Howell v. Travelers Indem. Co.*, 237 N.C. 227, 232 (1953). This case does not involve mandatory or compulsory motor vehicle liability insurance to protect against the financial irresponsibility of reckless drivers. *Under*insured motorist coverage is optional for the insured. *Comp.* N.C.G.S. § 20-279.21(b)(4) *with* N.C.G.S. § 20-279.21(b)(2), (3); *see also Hartford Underwriters Ins. Co. v. Becks*, 123 N.C. App. 489, 493–94 (1996) (rejecting defendants' suggestion that underinsured motorist coverage "is 'required' or 'deemed mandatory' in *all* liability policies"). Our legislature also specifically provided in subsection 20-279.21(n) of the General Statutes of North Carolina that "[n]othing in this section shall be construed to provide greater amounts of uninsured or underinsured motorist coverage in a liability policy than the insured has purchased from the insurer under this section." N.C.G.S. § 20-279.21(n). Ironically, the construction adopted by the majority also results in Chapman's vehicle being deemed an *under*insured highway vehicle when Chapman's vehicle has the *same* liability coverage amounts as Lunsford's policy amounts for underinsurance. The majority's decision, thus, provides compensation for Lunsford exceeding her purchase as an insured and may have the effect of limiting the options available to residents in North Carolina for underinsured motorist coverage by increasing the costs of underinsured motorist coverage beyond the means of some.

Thus, while the Act is remedial and to be liberally construed, *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 573–74 (2002), substituting the Court's judgment and words for that of the legislature, especially when it may undermine the beneficial purposes of the Act, is not appropriate. *See Howell*, 237 N.C. at 232 ("Whether [the Act] ought to be brought more nearly into harmony with its declared object is a legislative and not a judicial matter.").

### III.     Choice of Law

This Court has held in accordance with the principles of *lex loci contractus* that an automobile insurance policy "should be interpreted and the rights and liabilities of the parties thereto determined in accordance with the laws of the state where the contract was entered even if the liability of the insured arose out of an accident in North Carolina." *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428 (2000) (citing *Roomy v. Allstate Ins. Co.*, 256 N.C. 318, 322 (1962)). However, this Court in *Collins* construed N.C.G.S. § 58-3-1 as recognizing an exception to the general rule of *lex loci contractus* "where a close connection exists between this State and the interests insured by an insurance policy." *Id.* (citing *Collins*, 335 N.C. at 95). *Collins* acknowledged that when a policy was purchased in another state, owned by a resident of another state, and for a vehicle titled in another state, the policy is governed by the law of the state in which the policy was issued. *Collins*, 335 N.C. at 94 (1993) (citing *Connor v. Insurance Co.*, 265 N.C. 188, 190 (1965); *Roomy*, 256 N.C. at 322). However, *Collins* involved an umbrella/excess liability insurance policy covering the wrongful

acts of agents of the insured with property predominately in North Carolina—ninety-seven trucks titled in North Carolina where the insured's transportation division was located. *Id.* at 93–95. Given this close connection between North Carolina and the interests insured, the Court in *Collins* applied North Carolina law instead of the law of the state where the policy was issued. *Id.* at 95.

¶ 44        The Chapman Policy, however, did not insure any property in North Carolina. Also, as the accident did not occur in North Carolina, neither the Silverado, Chapman, nor Lunsford were in North Carolina at the time of the liability triggering event. Thus, Lunsford's reliance on *Collins* for the proposition that North Carolina has a close connection to the interests insured under the Chapman Policy is misplaced.

¶ 45        The Court of Appeals decision in *Benton*, relied on by Lunsford, also does not support Lunsford's position. Not only is this decision not binding on this Court, but it is not relevant to the dispute. *Benton* did not involve or address a policy entered outside of North Carolina. *See* 195 N.C. App. at 89–90.[3]

---

[3] The majority dismisses but does not deny that *Benton* did not involve or address a policy entered outside of North Carolina. While the *Benton* opinion does not expressly state that it addresses policies entered outside or inside of North Carolina, it is clear from the *Benton* opinion that the argument before this Court concerning the impact of an out-of-state policy was not decided by the *Benton* court. Thus, we neither ignore Farm Bureau's argument nor precedent from this Court. We are also mindful that even when our rulings do not implicate the Full Faith and Credit Clause of Art IV. § 1 of the United States Constitution, we should not only consider our law where consideration for other sovereigns in this federation is due.

¶ 46     Instead, this case is more analogous to *Owens* where this Court found no error in the trial court's conclusion that no significant connections existed between the tortfeasor's policy and North Carolina where the policy was issued to the tortfeasor in Florida, the insured vehicle involved in the accident had a Florida identification number and Florida license plate, the tortfeasor had a Florida license, the tortfeasor never had a North Carolina license, and the accident occurred in North Carolina. 351 N.C. at 428–29. In *Owens*, the location at the time of the accident was casual, and all significant connections occurred in Florida. *See id.* at 429. As a result, this Court concluded the policy "must be construed in accordance with Florida law." *Id.*

¶ 47     In this matter, it is undisputed that the policy was purchased in Tennessee, owned by a Tennessee resident, and covered a vehicle owned by a Tennessee resident. The accident also did not occur in North Carolina. Thus, all the significant connections occurred in Tennessee. The residency of the passenger at the time of the accident occurred by chance, just as the location of the accident occurred by chance in *Owens*. Thus, Tennessee law applies to the Chapman Policy. The residency of a passenger in North Carolina at the time of the accident by itself does not constitute a sufficient connection to warrant application of North Carolina law.[4]

---

[4] Lunsford's final argument that the financial responsibility provision, located in the Auto Liability section of the Chapman Policy, mandates that North Carolina law applies to the Chapman Policy in this matter was not raised before the trial court and was presented for consideration for the first time on appeal in her reply before the Court of Appeals. This Court, however, "has long held that where a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get

¶ 48        As it is undisputed that underinsured motorist coverage is not capable of being applied under Tennessee law in the facts of this case, there are no "limits of underinsured motorist coverage," applicable under the Chapman Policy. *See* N.C.G.S. § 20-279.21(b)(4). Hence, the underinsured motorist coverage limits under the Chapman Policy of $50,000 per person/$100,000 per accident cannot be stacked, i.e., added to the underinsured motorist coverage under the Lunsford Policy. Because the "sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident," $50,000 per person/$100,000 per accident under the Chapman Policy, is not less than the sum of "the applicable limits of underinsured motorist coverage," $50,000 per person/$100,000 per accident under the Lunsford Policy, there is no underinsured highway vehicle. N.C.G.S. § 20-279.21(b)(4). Absent an underinsured highway vehicle, Lunsford cannot satisfy the statutory and policy requirement for underinsured motorist coverage in North Carolina—that the insured person, Lunsford, be legally entitled to recover bodily damages from the owner or operator of an *underinsured highway vehicle. See* N.C.G.S. § 20-279.21(b)(3), (4).

---

a better mount in the Supreme Court.'" *State v. Sharpe*, 344 N.C. 190, 194 (1996) (quoting *Weil v. Herring*, 207 N.C. 6, 10 (1934)). Because this is a new theory for the application of North Carolina law not raised before the trial court, it is not appropriate for this Court to address this argument.

## IV.    Conclusion

¶ 49        Applying the plain language of the statute dictates that the underinsured motorist coverage of the Chapman Policy must be capable of being applied to be stacked. As Tennessee law applies to the Chapman Policy and excludes underinsured motorist coverage in the facts of this case, the trial court's judgment in favor of Farm Bureau should be affirmed.

Chief Justice NEWBY and Justice BERGER join in this dissenting opinion.